GRACE L. FURNISS and WILLIAM P. FURNISS

*v.*

WILLIAM H. LEUPP, trustee.

[Decided June 22d, 1904. Filed December 23d, 1904.]

A trustee of a fund made an unauthorized investment of a portion of it, which his successor recovered, with interest, from his executors. The original trustee also made an unauthorized loan of a part of the fund, at their request, to the life tenants entitled to the income. The deed of settlement provided that the life tenants should have no power to encumber or anticipate income.—*Held*, that the application of the interest recovered from the executors of the original trustee to the payment of the debt of the life tenants did not amount to an anticipation of the income, but was proper.

---

On motion on petition and answer.

*Mr. Randolph Perkins,* for the petitioners.

*Mr. Willard P. Voorhees,* for the respondent.

PITNEY, V. C.

The petitioners, Grace L. Furniss and William P. Furniss, are tenants for life of a fund of about $100,000 in the hands of the respondent, William H. Leupp, who was appointed trustee thereof by this court as successor to the original trustee, Solon Humphreys, deceased.

Among the assets of the estate was an obligation of one Crosby for $5,700, which had been taken by said Humphreys for money loaned by said Humphreys as trustee under circumstances which rendered Humphreys personally responsible for the same.

The respondent, Leupp, recovered from the executors of Humphreys the principal sum of $5,700 and interest thereon from December 21st, 1899, amounting to $1,316.92.

The object of the petition is to compel the trustee to pay and distribute that sum of $1,316.92 among the petitioners.

The defence set up by the trustee in his answer is that the petitioner Grace borrowed of the trustee, Humphreys, $1,500 in July, 1899, and secured it by a mortgage on property known as "Miacomet," on the island of Nantucket; that subsequently, in 1894, she conveyed "Miacomet," subject to the mortgage, to the petitioner William, who expressly assumed the payment of the mortgage; and subsequently, on September 30th, 1897, the petitioner William borrowed the sum of $350 of the funds of the estate from the trustee, Humphreys, and to secure the same executed to him a mortgage covering "Miacomet" and also another property in Nantucket, known as "Hertzruhe." Respondent further avers that these investments were entirely unwarranted and the securities quite insufficient and were such a misapplication of the funds of the estate as to render both Humphreys and the petitioners liable to replace the moneys in restoration of the estate. He further avers that, although these Nantucket mortgages were not specifically mentioned in the decree of this court, which decree is dated July 16th, 1901, which appointed him trustee, and were not accepted by him as available assets, yet they did in fact pass to him by virtue of one of the clauses of said order. And he asserts that it is his duty

to insist upon the application of the arrears of interest, $1,316.92, to the reduction of the Nantucket mortgages.

In this I think he is clearly right.

(In order that there may be no mistake it is proper to observe that the petitioner Grace obtained from the trustee, Humphreys, two separate loans upon separate properties in Nantucket, of which one was paid off by her in cash to said Humpreys and is mentioned in the above-mentioned order of July 16th, 1901. It was not suggested at the argument that the two mortgages herein first specifically mentioned were covered by the clause in the order of July 16th, 1901, which refers to the Nantucket mortgages.)

Respondent, in his answer, further sets out facts, which it is not worth while to recite here, tending to show that there are other parties interested in the disposition of the present fund and that the proceeding should have been by *bill*, not by petition.

The matter was brought on for hearing upon the petition and answer, and for the purposes of the hearing the facts set forth in the answer were admitted.

The reliance of the petitioners, in answer to the defence of the respondent, was rested upon a clause found in the original deed of settlement, dated July 31st, 1882, by which the fund was vested by the petitioners in Mr. Humphreys in these words:

"The said trustee, party of the second part, shall hold principal, increase and income of said fund, free from all claims, attachments, judgments, executions and liens of every nature by creditors against either of said parties of the first part, and the said parties of the first part shall not have, nor shall either of them have, any power to anticipate, charge or encumber the said principal fund or any part thereof, or the increase, interest or income thereof, or in any way defeat the intent of this instrument as herein expressed, which is to make provision for the support, maintenance and personal comfort of the parties of the first part, free from all liens and claims of creditors."

The question for determination is whether the fund now in immediate dispute comes within the scope of that language.

The rule seems to be entirely settled that when a trustee makes an unauthorized investment of trust funds at the request of and

for the benefit of the *cestui que trust* for life of the income, such trustee, though himself liable to make good any loss arising therefrom, has the right to call on the *cestui que trust,* who has requested the investment, to make good that loss so far as his interest in the trust fund will suffice for that purpose. *2 Perry Trusts § 543,* last clause; *Lewin Trusts (8th Eng. ed., by Flint) *911.*

It is equally well settled that where the deed of settlement, as here, contains a clause against anticipation, the remedy against the *cestui que trust* will not be so enforced as to work such anticipation.

The English cases are collected in *7 Chit. Eq. Dig. (4th ed., 1888) pp. 7078–7083.*

But counsel for respondent contends, I think, rightly, that what the respondent here claims will not amount to an anticipation, and so is not forbidden by the clause in the settlement above recited.

He distinguishes between income which has accumulated for several years and has not been disposed of by the tenant for life and the income at present accruing and to accrue.

The forceful words of the clause are "anticipate, charge or encumber * * * the increase, interest or income" of the fund. I am unable to perceive how the proposed action of the respondent will be in contravention of that language.

The precise question is not without authority. I refer to *Moore* v. *Moore,* decided by Vice-Chancellor Knight-Bruce, and reported in *1 Coll. 54.*

In that case a settlement was made by a husband upon his wife at their marriage and the fund was placed in the hands of trustees, who for many years paid the whole income to the husband. The wife sued the trustees to recover the interest which had been so misapplied, and a decree was made against them to make good the amount, which was afterwards ascertained at over £300. After the decree establishing the liability and before the amount was ascertained, Mrs. Moore mortgaged the fund to one Asprey to secure £308. The deed of settlement contained a clause which the vice-chancellor held to amount to a restraint upon

anticipation, and the question arose upon the validity of the mortgage to Asprey, who applied by petition to have the sum due to him paid out of the fund when paid into court. The vice-chancellor, in rendering judgment, declared that it was quite clear that the income, which accrued before the assignment by way of mortgage, was not protected by the clause against antici-pation, and Mr. Asprey seems to have succeeded in his petition.

Another case is *Butler* v. *Cumpston,* decided by Sir Richard Malins, November 4th, 1868. *L. R. 7 Eq. Cas. 16.*

There the trustee of a marriage settlement (consisting of funds which, before marriage, were the property of the wife) for a wife, expressly without power of anticipation, had shares in a bank, involving personal liability, vested in him upon the trusts of the settlement; and at the request of the wife he took up and paid for an allotment of new shares in the same bank upon her promise that the purchase-money should be paid out of certain savings she had made of her separate estate. The bank failed and the trustee was compelled to pay out of his own funds not only the price of the new shares so subscribed for by him at her request but also an assessment based upon his liability as a shareholder.

These payments, on account of the new shares, amounted to £1,540. The savings which the wife had made amounted in the aggregate to £2,676, of which £350 had been on deposit in the insolvent bank and £1,352 had been invested by the wife in the names of the trustees, but without any declaration, oral or written, that it should become subject to the deed of settlement.

It was held that all the savings of the wife which came out of the income of the trust estate, including that which had been invested in the names of the trustees, was liable to make good the loss which the trustees had incurred by the new allotment of shares. This was done on the ground that the wife's promise to repay the trustees the purchase-money of those new shares was binding upon her separate estate under the laws of England, and also that her request to the trustees to purchase and hold the shares included by implication an agreement on her part to

indemnify the trustees against any liability arising therefrom, which was also binding upon her separate estate; that the moneys, which were made up of the accumulations of the savings which had been invested in the names of the trustees, did not become subject to the terms of the settlement and continued to be a part of her separate estate, and that all of the accumulations of savings were freed from the effect of the provision against anticipation found in the deed of settlement.

I think the present case is within the authority and reasoning of the two cases just cited.

In *Moore* v. *Moore, supra,* the accumulation of the income was the result of an improper application by the trustee of the income and was not assented to or acquiesced in by the tenant for life, yet, when they had accrued and been adjudged to be due to her they were held to be at her disposal, notwithstanding the clause against anticipation.

In the later case of *Butler* v. *Cumpston, supra,* the accumulations were the voluntary act of the wife, the life tenant, and they were held to have become her separate estate freed from the effect of the restriction against anticipation and liable to answer for her contracts.

Here the indebtedness of the petitioners to the estate is the result of a misapplication by the former trustee of the body of the estate made at the special instance and request of the petitioners, and the present trustee is clearly entitled, and it is his duty, acting in the interests of the persons in remainder, to enforce and collect that indebtedness, if practicable.

He asserts it by way of set-off against the claim of the petitioners for a fund in his hands, which is the result of accumulation for many years of income of their estate which arose and has come to his hands precisely as did the income of the estate in the case of *Moore* v. *Moore, supra.*

I am of the opinion that justice and equity require that the defendant should be declared to have the right to apply (a portion of) the sum of money here involved ($1,316.92) toward the reduction of the indebtedness of the petitioners to the estate.

The working out of this right will be subject to certain considerations arising upon the petition and answer not necessary now to be mentioned.